J-A12011-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HASAN SHAREEF | : | |
| | : | |
| Appellant | : | No. 815 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 20, 2018
In the Court of Common Pleas of Butler County Criminal Division at
No(s):  CP-10-CR-0001714-2016

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    FILED JULY 23, 2020

Appellant, Hasan Shareef, appeals from the judgment of sentence following his conviction of possession with intent to deliver a controlled substance ("PWID") and persons not to possess a firearm.[1]  We affirm.

On May 27, 2016, Trooper Brian Palko of the Pennsylvania State Police executed a search warrant at a three-story residential duplex on East Jefferson Street in Butler, Pennsylvania, related to Trooper Palko's investigation of a burglary of a boat rental business.  When Trooper Palko knocked on the door of the residence to announce the presence of the officers, the unlatched front door swung open.  Trooper Palko and the troopers who accompanied him then

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 6105(a)(1).

conducted a protective sweep of the first floor of the residence but did not find anyone present.

While clearing the first floor, Trooper Palko heard glass breaking from the upper floors of the residence and requested that the individual who was responsible for the noise come downstairs. When no one came down, Trooper Palko ascended the steps to the third floor and found Appellant emerging from a cubby hole with bloody hands from the broken glass. While sweeping the upstairs area, Trooper Palko observed a handgun in plain view on a ledge, another handgun sticking out of an open black leather bag behind a couch, and a glassine bag commonly used in drug trafficking. No one else aside from Appellant was discovered at the residence.

After securing Appellant, Trooper Palko applied for a second search warrant related to potential drug activity at the residence. From the black leather bag where the handgun was found, the troopers recovered multiple bags of cocaine and heroin, suboxone strips, various pills, drug paraphernalia, and approximately $6,000 in cash. Trooper Palko later obtained a search warrant to collect a saliva sample from Appellant for DNA testing, and genetic material from the two firearms recovered in the residence was determined to match Appellant's DNA.

Appellant was charged with persons not to possess a firearm, three counts of PWID, and other drug charges. Appellant filed an omnibus pre-trial motion, which sought the suppression of the evidence retrieved from the East Jefferson Street duplex. On September 21, 2017, the trial court denied this

motion as untimely. Appellant's court-appointed counsel then filed an application to withdraw, which the trial court granted, and Appellant retained substitute counsel. Appellant's new counsel then filed motions for leave to file pre-trial motions and to sever the firearms charge from the remaining charges. The trial court granted both motions. Appellant's counsel filed a suppression motion, which the trial court denied via memorandum opinion and order on February 7, 2018.

On October 22, 2018, Appellant was found guilty of the firearms offense after a one-day jury trial. On December 4, 2018, Appellant pleaded guilty to one count of PWID and the remaining charges were withdrawn. On December 20, 2018, Appellant was sentenced to an aggregate 54-to-108-month term of incarceration. Appellant then filed the instant appeal.[2]

On appeal, Appellant raises three issues: (1) whether the search and seizure of the separate attic room of the East Jefferson Street residence was

_____

[2] Appellant first filed a timely post-sentence motion on December 27, 2019. When the trial court failed to rule on the post-sentence motion within 120 days as required by Pa.R.Crim.P. 720(B)(3)(a) and the clerk of courts did not issue an order denying the motion by operation of law as required by Pa.R.Crim.P. 720(B)(3)(c), Appellant filed a notice of appeal on May 30, 2019. Because Appellant's untimely appeal followed a breakdown in the court system as a result of the clerk of court's failure to notify him of the denial of his post-sentence motion by operation of law, we will consider his appeal as timely filed. Commonwealth v. Braykovich, 664 A.2d 133, 138 (Pa. Super. 1995).

Appellant filed a concise statement of matters complained of on appeal on June 13, 2019. The trial court filed its Pa.R.A.P. 1925(a) opinion on July 29, 2019.

proper in the absence of a warrant; (2) whether sufficient evidence was presented that Appellant possessed the firearms found at the residence; and (3) whether Appellant was denied due process by virtue of the fact that the trial court did not order the jail where Appellant was being held to return certain legal papers to him in advance of trial.[3]

We first review Appellant's claim that the trial court erred in denying his suppression motion. Our standard of review of a trial court's ruling on a suppression motion is "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." Commonwealth v. Duke, 208 A.3d 465, 469 (Pa. Super. 2019) (citation omitted). We are bound by the facts found by the trial court so long as they are supported by the record, but we review its legal conclusions de novo. Commonwealth v. Kane, 210 A.3d 324, 329 (Pa. Super. 2019). The trial court has sole authority as fact-finder to pass on the credibility of witnesses and the weight to be given to their testimony. Duke, 208 A.3d at 470. "Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing

_____

[3] Appellant's brief does not contain a statement of the questions involved in his appeal as required by the Rules of Appellate Procedure. Pa.R.A.P. 2111(a)(4); Pa.R.A.P. 2116(a). However, because this defect in the brief does not impede our ability to discern and address the three issues Appellant seeks to raise, we decline to find waiver on this basis. Werner v. Werner, 149 A.3d 338, 341 (Pa. Super. 2016). We have summarized the appellate issues from the summary of the argument section of his brief and the headings within the argument section of the brief. See Appellant's Brief at 3-4, 10-11.

party and any uncontradicted evidence presented by the defendant." Kane, 210 A.3d at 329 (citation and brackets omitted).

On appeal, Appellant challenges the initial search warrant issued for the search of the East Jefferson Street residence, contending that it only related to the items taken during the burglary of the boat rental business and did not state that the officers could search the attic room where he was found. Appellant thus contends that the warrant did not state with sufficient particularity the places to be searched and the items to be seized. Appellant further argues that the firearms seized in the residence were not in plain view but in fact in closed luggage. Appellant additionally contends that the Pennsylvania State Police troopers' entry into the residence violated the knock and announce rule set forth in Pennsylvania Rule of Criminal Procedure 207. Finally, Appellant argues that the troopers impermissibly obtained a buccal DNA sample from him via a search warrant because "DNA is a sacred bodily fluid" and may only be collected with the individual's consent. Appellant's Brief at 10.

Initially, we observe that, while Appellant filed a broad suppression motion asserting various grounds for relief, the motion did not argue that the search warrant for Appellant's buccal DNA sample was constitutionally impermissible because DNA is a sacred bodily fluid. It is well-established that issues not first presented to the trial court are waived on appeal. Pa. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Even issues of constitutional dimension are

waived if they are not preserved in the trial court.  Commonwealth v. Cline, 177 A.3d 922, 927 (Pa. Super. 2017).  "The appellate rules direct that an issue must be raised in the trial court in order to provide that court with the opportunity to consider the issue, rule upon it correctly, and obviate the need for appeal."  Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc., 892 A.2d 830, 835 (Pa. Super. 2006).  Because Appellant did not present his appellate challenge to the DNA warrant to the trial court, that issue is waived.

Next, we conclude that Appellant waived his challenge based upon the particularity requirement of the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution because he did not raise these issues in his concise statement of errors complained of on appeal.  It is axiomatic that issues not included in an appellant's concise statement are waived for purposes of appeal.  See Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Commonwealth v. Proctor, 156 A.3d 261, 267 (Pa. Super. 2017) ("[I]t is well-settled that issues that are not set forth in an appellant's statement of matters complained of on appeal are deemed waived." (citation, quotation marks, and brackets omitted)).

Furthermore, we are prevented from conducting a meaningful review of Appellant's remaining suppression issues as a result of the fact that no transcript of the suppression hearing appears in the certified record.  "The

fundamental tool for appellate review is the official record of the events that occurred in the trial court." Commonwealth v. Preston, 904 A.2d 1, 6 (Pa. Super. 2006) (en banc). The certified record consists of "original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court." Pa.R.A.P. 1921. "[A]n appellate court is limited to considering only the materials in the certified record when resolving an issue." Preston, 904 A.2d at 6; see also In the Interest of G.E.W., ___ A.3d ___, 2020 PA Super 133, *7 (filed June 8, 2020). In Pennsylvania, we place the responsibility of ensuring that the record on appeal is complete "squarely upon the appellant and not upon the appellate courts." Preston, 904 A.2d at 7.

With regard to transcripts, our Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary for resolution of the issues appellant raises on appeal. Pa.R.A.P. 1911(a). When an appellant fails to adhere to the appellate rules and order all necessary transcripts, "any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." Preston, 904 A.2d at 7 (citation omitted); see also G.E.W., 2020 PA Super 133, *7.

In the present matter, a hearing was scheduled on Appellant's suppression motion for February 5, 2018, and the trial court issued its memorandum opinion and order denying the suppression motion on February

7, 2018. In its memorandum and order, the trial court solely addressed Appellant's argument that the affidavit of probable cause accompanying the initial search warrant did not establish probable cause that items taken from the burglary of the boat rental business could be found in the East Jefferson Street residence. Memorandum Opinion, 2/17/18, at unnumbered pages 1, 3.[4]

Following the trial court's ruling, Appellant filed a pro se motion to dismiss his privately retained counsel on February 14, 2018; the trial court ultimately permitted counsel's withdrawal on March 6, 2018. On February 23, 2018, Appellant filed a pro se handwritten request for a transcript for the "oral arguments" heard on his suppression hearing on February 5, 2018. Docket No. 54. The Butler County Clerk of Courts responded to Appellant by letter of that same date explaining that in accordance with a new local rule, all transcript requests must be made through the filing of a "Request for Transcripts" form. Docket No. 55. Neither Appellant nor his later appointed

_____

[4] We further observe that the trial court did not cite any testimony or evidence presented at the hearing in its memorandum opinion denying the suppression motion. Although it is impossible to determine definitively without the transcript, it appears that Appellant solely raised a facial challenge to the affidavit of probable cause accompanying the initial search warrant at the February 5, 2018 hearing, an issue distinct from any of the arguments he presents on appeal. In such a case, Appellant's appellate suppression issues would be waived for the purposes of appeal. Commonwealth v. Leaner, 202 A.3d 749, 765 n.3 (Pa. Super. 2019) (holding that an issue raised in a pre-trial motion but abandoned at a subsequent hearing is waived on appeal).

trial counsel requested a transcript of the February 5, 2018 proceedings, and the transcript for that hearing was not entered on the docket.

In sum, our review of the record reveals that Appellant did not order a transcript of the February 5, 2018 suppression hearing and that this transcript is not contained in the certified appellate record. While Appellant did submit a handwritten request for the transcript, the clerk of courts promptly responded to Appellant that his request was not proper under the local rules and informed him where to locate the appropriate form to request a transcript. Furthermore, although Appellant submitted the request while he was in the process of discharging his privately retained attorney, new counsel was appointed for Appellant, his counsel submitted the proper request form for the transcripts of later proceedings in this case, and these transcripts were noted on the docket and included in the certified record. Therefore, Appellant has not demonstrated that the absence of the suppression hearing transcript is attributable to a breakdown in the judicial process. Preston, 904 A.2d at 8 ("An appellant should not be denied appellate review if the failure to transmit the entire record was caused by an 'extraordinary breakdown in the judicial process.'" (citation omitted)).

Appellant's remaining suppression arguments that the troopers did not comply with the knock and announce rule and did not discover the firearms in plain view each require consideration of the factual record developed at the suppression hearing as to which the Commonwealth had the burden of production and persuasion. See Pa.R.Crim.P. 581(H), Comment; see also

Commonwealth v. Enimpah, 106 A.3d 695, 701 (Pa. 2014); Commonwealth v. Frederick, 124 A.3d 748, 755 (Pa. Super. 2015) (Commonwealth bears the burden of proving at the suppression hearing that it complied with the knock and announce rule or that the circumstances satisfied an exception to the rule). The absence of the testimony and evidentiary record established at the suppression hearing testimony, therefore, precludes our meaningful review of these arguments. G.E.W., 2020 PA Super 133, *7; Preston, 904 A.2d at 7. Accordingly, in the absence of the suppression transcript, these issues are waived.

In his second appellate issue, Appellant argues that there was "no proof" that he owned the firearms found at the East Jefferson Street residence. Appellant's Brief at 10. Appellant contends that his genetic material only was present on the firearms as a result of blood splatter from the cuts on his hands after he attempted to escape through a window. Appellant asserts that, even if the genetic material was not from his blood and his fingerprints were present on the firearms, such evidence was insufficient to show ownership because "[t]ouch alone is not ownership." Id.

While Appellant does not frame this issue as a challenge to the sufficiency of the evidence for his persons not to possess a firearm conviction,

we analyze it under that framework.[5]  We have explained our standard of

review with respect to a sufficiency of the evidence argument as follows:

> [w]hen reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence.  The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence.  As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

Commonwealth v. Hill, 210 A.3d 1104, 1112 (Pa. Super. 2019) (citations,

quotation marks, and brackets omitted).

To sustain a conviction of persons not to possess a firearm under Section

6105(a) of the Crimes Code, the Commonwealth must prove that "the

individual (1) possessed, used, controlled, sold, transferred, or manufactured

a firearm (or obtained a license to do any of the foregoing activities); and (2)

---

[5] We note that Appellant preserved the sufficiency of the evidence claim by raising the issue in his concise statement of matters complained of on appeal. Pa.R.A.P. 1925(b) Statement, 6/13/19, ¶15.  The trial court found this issue to be waived because the concise statement did not state with specificity the element or elements upon which the evidence was allegedly insufficient.  Trial Court Opinion, 7/29/19, at 3; see, e.g., Commonwealth v. Ellison, 213 A.3d 312, 320–21 (Pa. Super. 2019).  While we agree with the trial court that Appellant's concise statement is not a model of clarity, a fair reading of the statement makes clear that the crux of Appellant's issue is that he did not believe that the Commonwealth had shown that he owned or possessed the firearms found in the East Jefferson Street residence.  Thus, we decline to find waiver on this ground.

has been convicted of a specific type of offense" enumerated in the statute. Commonwealth v. Greenlee, 212 A.3d 1038, 1045 (Pa. Super. 2019) (emphasis omitted). Here, Appellant does not contest that he had previous disqualifying convictions but rather he argues that the Commonwealth did not prove the first element related to his possessory interest in the firearms.

In cases where a defendant is not found in actual possession of a prohibited item, the Commonwealth must establish that the defendant had constructive possession of the item to support a conviction. Commonwealth v. McClellan, 178 A.3d 874, 878 (Pa. Super. 2018) (concluding that conviction under Section 6105(a) supported by constructive possession of firearm); Commonwealth v. Harvard, 64 A.3d 690, 699-700 (Pa. Super. 2013) (same). Constructive possession is defined as "conscious dominion" of an object, meaning that the defendant has "the power to control the contraband and the intent to exercise that control." Commonwealth v. Parrish, 191 A.3d 31, 36 (Pa. Super. 2018) (citation omitted); see also McClellan, 178 A.3d at 878. "As with any other element of a crime, constructive possession may be proven by circumstantial evidence," and the requisite knowledge of the item's whereabouts and intent to exercise control over the item may be inferred from the totality of the circumstances. McClellan, 178 A.3d at 878 (citation omitted).

In this case, after hearing glass breaking upstairs, Trooper Palko and his fellow troopers went up to the third floor of the East Jefferson Street residence, which Trooper Palko described as an "open," attic-like living space. N.T.,

10/22/18, at 32-33, 35. The troopers located Appellant coming out of a "cubby hole" area of the third floor with a cut on his hand after apparently attempting to escape through a window. Id. at 32-33. The troopers also found two handguns in the third floor living space: a Bond Arms Defender derringer found on a ledge by the top of the stairs and an Intratec Tec-22 pistol discovered a few feet away protruding from a black leather bag behind a couch. Id. Appellant was the only individual located on the third floor, or indeed in the entire residence. Id. at 33.

After collecting the firearms, Trooper Palko sent them to a Pennsylvania State Police crime laboratory. Id. at 37, 40. Trooper Palko testified that he did not observe any blood on the handguns while packaging them for testing. Id. at 49. A forensic serologist at the laboratory testified at trial that she took swabs for "touch DNA" from the two handguns and did not detect blood at any of the sampled areas. Id. at 56-58. A scientist in the forensic DNA division of the laboratory testified that DNA from two individuals was detected from the swab of the grip of the Tec-22 pistol, but only one of the individuals contributed enough DNA to be suitable for analysis. Id. at 70. DNA from three individuals was obtained from the swab of the grip of the Bond Arms Defender, but there was only sufficient DNA from one of the individuals for testing. Id. at 71. Upon comparison of Appellant's DNA obtained from a buccal swab, Appellant's DNA was determined to match the DNA profiles of

the suitable samples obtained from the grips of the two handguns to an extremely high degree of probability.[6] Id. at 72-76.

We conclude that the evidence at trial was sufficient to show Appellant's constructive possession of the firearms found at the East Jefferson Street residence. Appellant was found in the same third-floor living area of the house as the handguns, and Appellant's DNA was detected on the grips of both guns. Compare McClellan, 178 A.3d at 879 (sufficient evidence to find constructive possession of gun found in shared basement common area of home shared with family when DNA samples from the gun's grip and magazine showed that the gun was substantially more likely to have been touched by the defendant as opposed to the family members with which he lived). While Appellant asserts that his DNA found its way onto the guns from blood splatter after he broke a window, both Trooper Palko and the serologist denied observing blood on the guns. Furthermore, Appellant's DNA was the only genetic material of sufficient quantity to allow for testing, further bolstering the finding that he was the possessor of the guns. Even to the extent Appellant could not be said to have exclusive access to the third-floor living area where the firearms were discovered, the evidence presented was sufficient to show that Appellant had joint constructive possession of the two handguns. See id. at 878-79 (noting

_____

[6] The forensic DNA scientist testified that the probability of randomly selecting an unrelated individual exhibiting the same DNA profile as Appellant was at least one in 45 sextillion with respect to the sample from the Bond Arms Defender and at least one in 190 septillion with respect to the sample from the Tec-22 pistol. N.T., 10/22/18, at 74-76.

that the fact that another individual may have control and access to contraband does not negate the defendant's constructive possession). Appellant's second appellate issue thus merits no relief.

Finally, Appellant argues that his conviction must be vacated because the trial court denied him due process of law when it failed to order the return of his legal materials that had been seized by Butler County Prison authorities prior to trial based upon the suspicion that they were laced with fentanyl or other controlled substances. Appellant claims that his inability to reference his cases, handwritten notes, and "exculpatory evidence" prevented him from mounting an effective defense at trial. Appellant's Brief at 11.

Both the Fourteenth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution provide a criminal defendant with due process of law. See Commonwealth v. Turner, 80 A.3d 754, 763 (Pa. 2013) (stating that the two constitutional provisions are coextensive). "While not capable of an exact definition, the basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." Id. at 764. Due process is "flexible and calls for such procedural protections as the particular situation demands." Commonwealth v. McClelland, 165 A.3d 19, 29 (Pa. Super. 2017) (citation omitted).

A review of the record reveals that on September 21, 2018, approximately one month prior to trial, Appellant submitted to the trial court

- 15 -

a pro se motion seeking the return of his legal papers taken by the Butler County Prison. As Appellant was represented by counsel, the clerk of courts forwarded Appellant's pro se filing to his trial counsel, and Appellant's counsel filed a motion for the return of property on September 25, 2018. The trial court ordered a hearing for October 31, 2018. At Appellant's October 22, 2018 trial, Appellant complained that he could not present an effective defense without his "law work," however the trial court deferred any ruling on the motion for return of property until after the October 31st hearing. N.T., 10/22/18, at 3-5, 10. On November 26, 2018, after the hearing and the trial court's receipt of a written submission from the Butler County Prison, the trial court entered an order permitting the return of Appellant's property to his attorney or another designee provided that he execute an authorization to that effect.

Upon review, we do not discern a violation of Appellant's due process rights. The trial court considered Appellant's motion for the return of his property, provided Appellant with an opportunity to be heard regarding the actions of the Butler County Prison, and rendered a decision on the motion that was largely in Appellant's favor. While Appellant maintains that he needed his legal work at trial in order to effectively defend himself, Appellant did not seek a continuance of his trial based upon the unavailability of his legal papers. Furthermore, Appellant was represented by counsel at trial and his counsel did not represent to the trial court that his lack of access to Appellant's

legal papers would hinder his defense of Appellant.[7]  While Appellant asserts that he had exculpatory evidence among his seized property, at no point has he described to the trial court or to this Court the nature of this allegedly exculpatory evidence.  Therefore, Appellant's due process claim warrants no relief.[8]

Judgment of sentence affirmed.

_____

[7] We observe that Appellant did fire his trial counsel during trial after the Commonwealth rested, and Appellant was then permitted to personally examine Trooper Palko regarding the search of the East Jefferson Street residence and the seizure of Appellant and the firearms.  N.T., 10/22/18, at 101-14.  Appellant's trial counsel then resumed representation of Appellant and delivered the closing statement.  Appellant has not explained in this appeal how he would have more effectively mounted his own defense had he been in possession of his legal papers during his trial.

[8] Finally, we note that, to the extent Appellant directly challenges the Butler County Prison's action in taking away his legal papers, Appellant's remedy is not through an appeal of his judgment of sentence but rather through a civil action against the appropriate correctional authorities.  Furthermore, while Appellant appears to call into question the adequacy of his trial counsel's performance with respect to the motion seeking the return of his property, ineffective assistance of counsel claims are not cognizable on direct appeal except pursuant to limited exceptions not applicable here.  Commonwealth v. Hopkins, ___ A.3d ___, 2020 PA Super 25, *11-12 (filed February 7, 2020).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  <u>7/23/2020</u>